UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| RYAN FINK | CIVIL ACTION |
|---|---|
| VERSUS | No. 18-5447 |
| ST. BERNARD PARISH GOVERNMENT | SECTION I |

## ORDER & REASONS

The plaintiff's motion currently before the Court attempts to revive a dispute the Court considered settled. Plaintiff Ryan Fink ("Fink") has filed a motion[1] to revoke the settlement agreement reached with defendant, the St. Bernard Parish Government ("St. Bernard Parish"), based on the claim that his attorney, Dale Williams ("Williams"), did not have authority to settle for the amount that counsel represented as acceptable to Fink. In opposition, St. Bernard has filed a cross-motion[2] for summary judgment to enforce the agreement. The Court held an evidentiary hearing on July 22, 2019 with respect to the parties' motions. For the following reasons, the motion to revoke the settlement agreement is denied, and the cross-motion for summary judgment to enforce the settlement agreement is granted.

I. FACTUAL BACKGROUND

Fink worked as the Director of the TV and Film Office for St. Bernard Parish from April 2008 to April 2017, when he was terminated.[3] Two years before he lost his job, Fink was diagnosed with a congenital narrowing of the spinal canal, which

---

[1] R. Doc. No. 63.
[2] R. Doc. No. 66.
[3] R. Doc. No. 41.

1

resulted in decreased muscular strength and range of motion.[4] According to St. Bernard Parish, Fink's termination was based on, inter alia, employee misconduct, repeated tardiness, threats to and intimidation of coworkers, and insubordination.[5] Fink, however, asserted that the termination of his employment by St. Bernard Parish was a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and that St. Bernard Parish failed to provide him overtime compensation, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*[6] Fink also claimed that St. Bernard Parish deprived him of his right to Due Process under the U.S. Constitution.[7] The Court subsequently dismissed Fink's ADA discrimination claims and his Due Process claims,[8] leaving only his ADA retaliation and FLSA claims.

In February 2019, Fink began settlement discussions with his attorney, Williams.[9] According to Fink, he "mention[ed] several six-figure amounts to Mr. Williams, as amounts [he] would be willing to settle for."[10] He also "recalls making the statement that I would settle for the most I could get, thinking that statement was made in the context of the six-figure numbers we had discussed."[11]

---

[4] R. Doc. No. 1, at 2 ¶ 6.
[5] R. Doc. No. 41, at 5–6.
[6] R. Doc. No. 1, at 6–7 ¶¶ 31–37.
[7] *Id.* at 7 ¶¶ 38–39.
[8] R. Doc. No. 51; R. Doc. No. 52.
[9] R. Doc. No. 63-1, at 1 ¶ 1.
[10] *Id.* at 1 ¶ 2.
[11] *Id.* at 1 ¶ 3.

A pretrial conference took place on March 26, 2019, during which counsel for both parties engaged in settlement discussions and agreed to settle Fink's case for $40,000.[12] Pursuant to the Court's scheduling order, the parties were on notice that they were to appear at the conference "fully authorized and prepared to discuss settlement possibilities with the Court."[13] At no time during the conference did counsel for either party raise concerns regarding their authority to enter into an agreement. In fact, Williams specifically advised the Court at the conference that he had settlement authority from his client for the amount of $40,000. Following successful negotiations, the Court issued an order of dismissal, "having been advised by counsel for the parties that all of the parties to this action have firmly agreed upon a compromise."[14]

According to Fink's sworn declaration, Fink first learned of the settlement agreement "in the early afternoon" of March 31, 2019, when Williams informed him "that the case had been settled at a pre-trial conference earlier in the week."[15] Upon receiving this information, Fink told Williams that he would not agree to the settlement terms.[16] However, evidence in the record and testimony from the evidentiary hearing demonstrate that Fink became aware of the settlement five days earlier—on March 26, 2019 shortly after the pre-trial conference. Exhibits submitted to the court include an email exchange that took place from 3:30 P.M. to 4:00 P.M.

---

[12] *See* R. Doc. No. 62; R. Doc. No. 71, at 3.
[13] R. Doc. No. 19-1, at 2.
[14] R. Doc. No. 60.
[15] R. Doc. No. 63-1, at 2 ¶ 5.
[16] *Id.*

3

between Fink and Williams regarding "this settlement."[17] Furthermore, Fink testified at the evidentiary hearing that after receiving Williams's email on March 26, 2019 asking Fink to call Williams regarding the settlement agreement, Fink contacted Williams using his mother's phone that same day.[18]

On April 15, 2019, the Court held a status conference with Fink, Williams, and counsel for St. Bernard Parish, during which the Court explained to Fink that his case was dismissed "based on the parties' settlement agreement and Williams's representation to the Court that he had Fink's authority to negotiate such an agreement."[19] At this status conference, Fink told the Court that he had not been previously advised that his case had settled. Based on a review of the record and hearing testimony, the Court finds Fink's comment to the Court on April 15, 2019 regarding his alleged unawareness of the settlement to be not credible.

Over one month later, on May 21, 2019, Fink informed Williams via email, "I do not want to settle for $40,000."[20] Fink states in this email, "[W]e agreed on $280,000 in which [sic] that didn't even include front pay."[21] The Court notes that the this email from Fink specifying a settlement figure of $280,000 contradicts Fink's

---

[17] R. Doc. No. 71-3, at 1. Williams wrote to Fink, "Call me when you get a chance. I want to make sure you understand everything that went into this settlement," indicating that a settlement agreement had been reached. *Id.*

[18] Based on this testimony, Fink's arguments regarding his phone malfunctions are irrelevant because he was able to communicate with Williams using another phone.

[19] R. Doc. No. 62.

[20] R. Doc. No. 71-1, at 2. Based on the email communications between Fink and Williams submitted to the Court, it appears that Fink engaged in a review of Williams's work on his behalf and that he was dissatisfied with the outcome. *See* R. Doc. No. 71-1, at 1–2; R. Doc No. 71-2, at 1–2.

[21] R. Doc. No. 71-1, at 2.

4

sworn declaration stating that Fink informed Williams of "*several* six-figure amounts…as amounts [he] would be willing to settle for."[22]

More than two weeks later, Williams, acting as Fink's counsel, filed his motion to revoke the settlement agreement. On July 22, 2019, the Court held an evidentiary hearing to determine the enforceability of the settlement agreement. *See Mid-South*, 733 F.2d at 389–90 ("[W]hen opposition to enforcement of the settlement is based not on the merits of the claim but on a challenge to the validity of the agreement itself, the parties must be allowed an evidentiary hearing on disputed issues of the validity and scope of the agreement.").

## II.     LAW AND ANALYSIS

### A.

"A District Court has the power to enforce summarily a settlement agreement reached in a case pending before it." *Mid-South*, 733 F.2d at 389. Where the "substantive rights and liabilities of the parties derive from federal law," it is federal law that governs the enforceability and validity of settlement agreements.[23] *Nelson v. Chet Morrison Diving, L.L.C.*, No. 05-1682, 2007 WL 442220, at *2 (E.D. La. Feb. 5, 2007) (Africk, J.) (quoting *Mid-South*, 733 F.2d at 389) (additional citations

---

[22] R. Doc. No. 63-1, at 1 ¶ 2 (emphasis added).
[23] Fink's supplemental brief in support of his motion discusses the requirement under Louisiana law that "express consent must be shown for a settlement to be consummated." R. Doc. No. 69, at 2. (citing *Melerine v. State Farm Ins. Co.*, No. 06-9568, 2008 WL 506093, at *2 (E.D. La. Feb. 20, 2008)). However, the case Fink cites for this proposition is inapposite because the settlement agreement at issue in that case was based on a state law claim. *Melerine*, 2008 WL 506093, at *2. As Fifth Circuit precedent makes clear, federal common law applies to this matter because it solely involves federal claims.

5

omitted); *see Fisk Elec. Co. v. DQSI, L.L.C.*, 894 F.3d 645, 650 (5th Cir. 2018); *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981); *Demilia v. United Student Aid Funds*, No. 01-1733, 2001 WL 1543491, at *3 (E.D. La. Dec. 3, 2001) (Berrigan, J.). In this case, because the rights and liabilities of Fink's claims derive exclusively from the ADA, FLSA, and U.S. Constitution, federal common law applies to determine the enforceability of the settlement.

Under federal law, an attorney of record is "presumed to have authority to compromise and settle litigation of his client, and a judgment entered upon an agreement by the attorney of record will be set aside only upon affirmative proof of the party seeking to vacate the judgment that the attorney had no right to consent to its entry." *Quesada v. Napolitano*, 701 F.3d 1080, 1083 (5th Cir. 2012) (quoting *Mid-South*, 733 F.2d at 390). A party who intends to challenge the enforcement of a settlement agreement negotiated on his behalf bears the burden to establish some basis that his counsel of record lacked the requisite authority to enter into the agreement. *Harmon v. Journal Pub. Co.*, 476 F. App'x 756, 758 (5th Cir. 2012) (per curiam). "The mere fact that a party moving to vacate a settlement agreement informs its attorney, after an agreement has been reached, that he was not authorized to settle does not 'affirmatively prove' that the attorney had no authority." *Lion InvestBanc, L.L.C. v. Kennedy*, No. 04-610, 2004 WL 1597342, at *5 (E.D. La. July 16, 2004) (Duval, J.). The party must present an affirmative basis to overcome the presumption that the attorney of record was duly authorized to enter into the agreement.

6

In addition, the party must demonstrate that the settlement was "tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted." *Mid-South*, 733 F.2d at 390. When the parties "negotiate at arms-length and there was no taint of 'fraud, deception, coercion, or overreaching, the settlement [is] binding, despite a claim of mutual mistake." *Id.* at 392 (quoting *Strange v. Gulf & South American Steamship Co.*, 495 F.2d 1235, 1237 (5th Cir. 1974)). Absent these conditions, a party's alleged ignorance of specific limitations may constitute, at most, a unilateral mistake, which is insufficient to void the agreement. *See Mid-South*, 733 F.2d at 392.

## C.

Fink's principal objection to the settlement is that his attorney did not have authority to settle on his behalf for an amount below a six-figure monetary sum. While Fink admits making the statement to Williams "that I would settle for the most I could get," he now claims that there was a misunderstanding and that his statement was limited "to the context of the six-figure numbers we had discussed."[24] For his part, Williams attempts to explain this "miscommunication" as an error of interpretation when he "erroneously concluded that his client had given him authority to settle for an amount which represented, in his—the attorney's view, [sic]—the most which could be obtained."[25]

---

[24] R. Doc. No. 63-1, at 1 ¶ 3.
[25] R. Doc. No. 63, at 2.

7

The Court finds that Fink has failed to present an affirmative basis that to overcome the presumption that Williams had authority to settle Fink's case for the amount agreed upon on March 26, 2019 and that he has failed to satisfy his burden of proof with respect to the alleged invalidity of the agreement.

An attorney's belief that he had authority to settle for the amount entered "is highly probative of whether he actually was given authority," although "it is not conclusive." *Mid-South*, 733 F.2d at 391. Williams affirms that "he entered into settlement discussions in good faith" during the pretrial conference on March 26, 2019, "believing that he had the necessary authority from his client."[26] The only evidence that Fink has submitted in support of his challenge to Williams's authority is his own declaration asserting that he "specifically recalls mentioning" to Williams in February 2019 "several six-figure amounts…as amounts I would be willing to settle for" and that he would "settle for the most I could get."[27] Fink also acknowledged at the evidentiary hearing that he did not revoke Williams's authority to settle at any point during the proceedings. Fink's testimony at the hearing, the emails between Fink and Williams, and the statements by Williams lead the Court to conclude that Fink's recollection of events is cloudy and that it lacks convincing corroboration.

The Court finds that Fink provided Williams with the requisite authority to enter into the settlement agreement for $40,000 because it represented, in Williams's

---

[26] *Id.* at 1.
[27] R. Doc. No. 63-1, at 1 ¶¶ 2, 3. As noted above, this statement contradicts Fink's email to Williams on May 21, 2019, which specifies a settlement figure of $280,000. *See* R. Doc. No. 71-1, at 2.

8

view, "the most which could be obtained."[28] While Fink may not have specifically consented to a settlement figure of $40,000, he informed Williams that he would settle "for the most [he] could get." Accordingly, the amount agreed upon on March 26, 2019 was within the scope of authority that Williams had to settle Fink's case. Furthermore, no convincing evidence has been presented to suggest that the settlement was the result of a mutual mistake between the parties or that it involved fraud or coercion. Based on a review of the record and the parties' statements at the evidentiary hearing, the Court finds that the settlement agreement is valid and enforceable.

### III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that plaintiff's motion to revoke the settlement agreement is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's cross-motion for summary judgment to enforce the settlement agreement is **GRANTED**.

**IT IS FURTHER ORDERED** that should Fink refuse to execute a settlement agreement and accept the agreed-upon terms, St. Bernard Parish is granted leave to deposit **FORTY THOUSAND ($40,000.00) DOLLARS** into the Court registry in full satisfaction of the March 26, 2019 settlement in the above-captioned matter. Funds shall be withdrawn from the registry upon this Court's order pursuant to 28

---

[28] R. Doc. No. 63, at 2.

U.S.C. § 2041, *et seq*. and Fink's, or any other interested party's, compliance with the requirements of Local Rule 67.3.

New Orleans, Louisiana, July 22, 2019.

                                                  **LANCE M. AFRICK**
                                     **UNITED STATES DISTRICT JUDGE**